## J. M. KNOTTS ET ALS. *v.* SARAH BAILEY ET AL.

1. WILL.   *Pecuniary legacies.   Real estate, when chargeable.*

    As a general rule, the real estate is not chargeable with the payment of pecuniary legacies, unless the intention of the testator so to charge it is clearly expressed, or may be fairly deduced from the language of the will.

2. SAME.   *Residuary legatee.   What he takes.*

    Where it is manifest from the whole will that it was the design of the testator that the legacies should be paid at all events, the implication is that the residuary legatee or devisee shall take only what remains after the satisfaction of the previous dispositions.

3. SAME.   *Intention to charge real estate.   How manifested.*

    A will whereby the testator, after making several bequests without creating an express trust to pay them, blends the realty and personalty together as one fund in the residuary clause, discloses an intention to charge a bequest of money on the real estate.

APPEAL from the Chancery Court of Marshall County.

Hon. A. B. FLY, Chancellor.

*Stith & Phillips* and *Manning & Watson,* for the appellants.

1. A general legacy is never charged upon land, unless the intention so to charge it "is expressly declared, or *fairly* and *plainly* to be inferred from the terms of the will." *Lupton* v. *Lupton,* 2 Johns. Ch. 614, 623; *Tracy* v. *Tracy,* 15 Barb. 503. There is no such language as "after payment of debts and legacies," or any equivalent expressions. No deficiency of personalty was contemplated. There is a provision for the widow of both *realty* and *personalty,* the small general legacies and the residuary clause. In construing a will, the court may place itself in the position of the testator, and look to the surroundings, to ascertain intention. 42 Barb. 43; 38 Barb. 80; *Gilliam* v. *Chancellor,* 43 Miss. 437. When viewed in this light, could such intention be fairly imputed to the testator? Where, in a will, as in this one, there is a disposition of part of the realty, and also of the personalty, and then a general residuary clause disposing of "all the balance of my estate, of whatever kind," or all the rest and residue,

it implies that the testator had in his mind a balance of both personalty and realty, after satisfying the legacies out of the one, and the devises out of the other. The language should be taken " distributively, *reddendo singula singulis.*" *Lupton* v. *Lupton, ubi supra;* 3 Atk. 626, note; *Keeling* v. *Brown*, 5 Ves. 539; *Roman Catholic German Church* v. *Wachter*, 42 Barb. 43; *Paxson* v. *Potts*, 2 Green Ch. 313; *Tracy* v. *Tracy, ubi supra; Brook* v. *Small*, 7 Watts & S. 229; *Montgomery* v. *McElroy*, 3 Watts & S. 370.

2. The personalty is first liable, and must be first exhausted. A mere general legacy, made a charge upon the whole estate, must be satisfied out of the personalty, as the primary fund for that purpose. The heir should not suffer for the *devastavit* of the executor. *Lupton* v. *Lupton, ubi supra;* 4 Ves. 542; 1 Vernon, 94, 162; Prec. in Ch. 392; 3 Atk. 201; 1 P. Wms. 459; *Walcott* v. *Hall*, 2 Bro. Ch. 305; *Harris* v. *Fly*, 7 Paige, 425; *Bank of the United States* v. *Beverly*, 1 How. (U. S.) 134; *Tole* v. *Hardy*, 6 Cow. 333; *Hanna's Appeal*, 31 Penn. St. 53; *Evans* v. *Fisher*, 40 Miss. 643; *Paine* v. *Pendleton*, 32 Miss. 323; *Stigler* v. *Porter*, 42 Miss. 449; *Hollman* v. *Bennett*, 44 Miss. 322; *Turner* v. *Ellis*, 24 Miss. 173; *Webster* v. *Parker*, 42 Miss. 465.

*Mr. Stith* also made an oral argument.

*Fant & Fant*, for the appellees.

1. Where a testator makes several bequests, without creating an express trust to pay them, and then, in a general residuary clause, disposes of the rest, residue or balance of his estate, blending the realty and personalty together, the whole estate, real as well as personal, will be charged with the legacies. 1 Roper on Legacies, 671 and notes, 674; 2 Lomax on Executors, 86–92, and notes; Wigram on Wills, 238, 241; 1 Story Eq. Jur. §§ 602, 603; *North* v. *Custer*, 19 Pick. 67; *Nichols* v. *Postlethwaite*, 2 Dall. 131; *Downman* v. *Rust*, 6 Rand. 587; *Lewis* v. *Darling*, 16 How. (U. S.) 1; *Hassanclever* v. *Tucker*, 2 Binney (Pa.), 525; *Witman* v. *Norton*, 6 Binney (Pa.), 395; *M'Lanahan* v. *Wyant*, 1 Penn. 96; *Wallace* v. *Wallace*, 23 N. H. 149; *Flynn* v. *Croniken*, 9 How. Pr. (N. Y.) 214.

2. The bill in this cause shows a sufficient reason for resorting

to the real estate. *Templeton* v. *Tompkins*, 45 Miss. 424. There is no analogy between the class of cases cited and the case at bar. An implied power, or charge in a will, is just as binding, valid and effective in law as one express; and the construction of wills is unchanged by the statutory requirements in proceedings for the sale of lands for payment of debts. *Clark* v. *Hornthal*, 47 Miss. 490; 9 How. Pr. (N. Y.) 512; 9 Pet. 481; 4 Kent Com. 319.

*Arthur Fant*, on the same side, argued orally.

SIMRALL, C. J., delivered the opinion of the court.

A bill in chancery was exhibited by Sarah Bailey, *née* McDaniel, and her husband, to recover a legacy of $500, bequeathed to her by the testator Horatio Tyson. The bill charges that the testator left an estate worth about $25,000 but little indebted. After giving to his widow four slaves, to be selected by her, and land enough for them to work, by the second item of his will he bequeathed as follows: "I give and bequeath to Miss Sarah McDaniel, as a compensation for her services, the sum of $500." It is alleged that the legatee was an orphan, who had lived many years in the testator's family, and rendered valuable services, doing work usually performed by servants; that the testator expressed himself often as grateful for these services, and assured the complainant that she should lose nothing because thereof. The fifth item of the will is in these words: "My wish and desire is, that all the balance of my estate, of any sort whatsoever, that I may die possessed of, be divided between my other children, in the following manner: to wit, that James O. Tyson and Thomas U. Tyson each have $1,500 more than my daughter Elizabeth P. Knotts." The testator died in 1862. The personal estate, which went into the hands of the executors, has long since disappeared. But there is a valuable real estate in Marshall County, left by the testator. The bill seeks payment of the legacy out of these lands, as a charge upon them.

The single question raised by the demurrer (which was overruled) is whether the complainants have stated a case which entitles Mrs. Bailey to the relief sought.

The testator was the owner of lands and slaves, and doubt-

less supposed that the estate at the date of the will was abundantly able to respond to all the testamentary dispositions; but as we may suppose, in consequence of the war then raging, the personal estate disappeared, or became lost. It may be laid down as the general doctrine that the real estate, which goes to the heir or to the residuary devisee, is not chargeable with pecuniary legacies, unless the intention of the testator so to charge it has been expressly declared, or may be fairly deduced from the language of the will. If the testator has expressed his intention the one way or the other, that must prevail. But there are many cases, where the language of the will is obscure, and where the court must explore the entire instrument to ascertain the purpose. If it is manifest that the design was that the legacies should be paid at all events, no matter in what part of the will it appears, then the implication is fair and just, that the residuary legatee and devisee shall only have the remainder, after the satisfaction of previous dispositions. One of the safe tests that may be employed is to discover whether the testator, in disposing of his property, has kept the two estates, real and personal, separate and distinct, in the sense of giving immunities and privileges to the one over the other, or whether he has dealt with both, as a fund out of which the objects of his bounty shall receive the several dispositions which he designed for them.

It could hardly be doubted that the provision for the widow should be satisfied, whether there was any thing left for the residuary devisee or not. It might be suggested with great plausibility that he intended that the legacy should be paid to Miss McDaniel at all events, because it was given for services rendered by her, being in the nature of satisfaction by a legacy of an obligation of debt, and not purely a gift.

Although there is no express trust to pay, yet, if the testator has blended the realty and personalty together as one fund in the residuary clause, that manifests an intention to charge a bequest of money on the land. That proposition was adjudged in *Lewis* v. *Darling*, 16 How. (U. S.) 10. It was ruled that if a testator gives several pecuniary legacies, and then makes a general residuary disposition of the whole

estate, " blending the realty and personalty together in one fund, the real estate will be charged with legacies."

A will constructed on that plan indicates quite clearly that the residuary devisee shall take whatever of property remains after satisfying previous gifts. That principle finds abundant support in authority. *Witman* v. *Norton*, 6 Binney (Pa.), 395 ; *English* v. *Harvey*, 2 Rawle, 305 ; *Wright* v. *Denn*, 10 Wheat. 204 ; *Kidney* v. *Coussmaker*, 1 Ves. Jr. 436 ; *Adams* v. *Brackett*, 5 Met. (Mass.) 282. In *Shulters* v. *Johnson*, 38 Barb. 80, 90, the testator gave legacies to two daughters and two sons ; and in a separate clause devised " all the rest, residue and remainder of my real and personal estate" to two other sons, " share and share alike." In holding that the legacies were chargeable on the land, the court assigns this reason : " In the absence of specific devises, the blending of the entire estate into one residue, after giving legacies, indicates an intention of the testator to give only the residue which would be created when the previous dispositions of his will should be satisfied." In *Tracy* v. *Tracy*, 15 Barb. 503, 505, the residuary clause was, " all the rest and residue and remainder of my estate, both real and personal, . . . I give, devise and bequeath to my children by my present wife," " share and share alike." There, for the same reason, the lands were liable for the legacies. Both estates were blended in the disposition to the residuary devisee, and he was intended to receive whatever of both sorts of property remained, after fulfilling the previous gifts.

The common law regarded the heir with especial favor, and shielded his inheritance from any liability which the ancestor did not expressly or by fair implication impose on the land. The personal estate was esteemed the natural fund for the payment of debts and legacies. The lands were not burdened, unless the testator so intended. With us, both estates are alike chargeable with debts, the personal being the primary fund. It would hardly comport with our system of jurisprudence to shield the real estate from responsibility to legatees, on the nice distinctions made in some of the earlier cases. If the testator declares a purpose to dispose of his entire estate, and not to die intestate as respects any of it, the

appointment of a residuary devisee, to take the "rest and residue," would seem to mean that such residue would consist of whatever remainder there might be after the specific dispositions, whether in the form of general, pecuniary or specific legacies, had been subtracted. And, therefore, when the residuary clause embraces both estates, the testator meant that the devisee shall take whatever land and whatever personal property shall not be needed to carry into effect previous dispositions.

We construe this testator as declaring that the remainder of his property, after the widow has got the four slaves, and the *quantum* of land given to her for life, and after Miss McDaniel has been paid $500, be it much or little, shall be enjoyed by the residuary devisees.    *Decree affirmed.*